**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**TRA'SHUN RAYKEVIOUS CAMPBELL,**

**Plaintiff,**

**v.** **Case No. 25-cv-716**

**TINA L. GONZALEZ, *et al.*,**

**Defendants.**

---

**ORDER**

---

Plaintiff Tra'shun Raykevious Campbell, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Campbell was allowed to proceed on claims under both the Fourth and Eighth Amendment against the defendants for conducting an allegedly unconstitutional strip search. The defendants filed a motion for summary judgment. (ECF No. 24.) For the reasons stated below, the court grants the defendants' motion for summary judgment.

**FACTS**

At all times relevant, Campbell was incarcerated at Waupun Correctional Institution. (ECF No. 42, ¶ 1.) On July 6, 2024, after being escorted to the Health Services Unit (HSU) within the Restricted Housing Unit (RHU), Campbell refused to see the nurse on duty. (*Id.*, ¶¶ 3-4.) He then needed to be escorted back to his cell. (*Id.*) While being escorted back to his cell, Campbell saw defendant Lt. Andrew J.

Colin, so he stopped and asked if Colin would be willing to speak with him. (*Id.*, ¶ 6.) However, the other two correctional officers escorting Campbell did not allow Campbell to stop to talk to Colin, which upset Campbell. (*Id.*, ¶¶ 8-9.) Campbell then began to turn to towards the left side of the hallway in order "to stall and receive enough time to speak to the Lt." (*Id.*, ¶ 11.) At that point, non-defendant officer Nichols ordered Campbell to move to the right side of the hallway. (*Id.*, ¶ 12.) Campbell admits that he "purposely ignored" the directive. (*Id.*) Campbell "was then stabilized up against the tier wall." (*Id.*, ¶ 13.)

Colin ordered Campbell to move to the right side of the hallway, but Campbell "knowingly refused to answer because I was now irritated." (ECF No. 42, ¶ 14.) Colin then called for a "pad-subduing team", which was led by defendant Captain Tina L. Gonzalez. (ECF No. 26, ¶ 27.) When the team arrived, Campbell states that he "wasn't trying to hear anything they had to say, so I used dead weight tactics and tensed up." (ECF No. 42, ¶ 16.) Campbell was asked if he was going to comply, but he refused to speak, so he was put in a restraint chair. (*Id.*, ¶ 17.) It is undisputed that Campbell physically resisted being put into the restraint chair, to the point that Gonzalez unholstered her taser and put it on Campbell's leg. (ECF No. 41, ¶¶ 47-48.)

*Campbell's Version of the Strip Search*

Because of Campbell's behavior, Colin placed Campbell in control status, which, as part of the standard procedure to change statuses within the RHU, required Campbell to be strip-searched. (ECF No. 41, ¶¶ 50-51.) Colin informed Campbell that he was being placed in control status and asked Campbell if he would comply with a

visual strip search. (*Id.*, ¶ 52.) Campbell did not respond. (*Id.*) Colin then instructed the pad-subduing team to conduct a staff-assisted strip search because Campbell did not respond as to whether he would comply with a visual strip search. (*Id.*, ¶ 53.)

Gonzalez decided to conduct most of the strip search in the restraint chair outside the holding cell. (ECF No. 41, ¶ 54.) Campbell states that in this area there were "no privacy dividers or shields" so the prisoner who was in the cell to Campbell's left was not blocked from seeing the strip search. (ECF No. 42, ¶ 20.) Campbell states that his clothes were then cut off and "several other staff and another inmate were around as I was standing there now completely naked." (*Id.*, ¶¶ 22-24.) Because Campbell was in a restraint chair, staff could not complete the strip search because the chair "prevents them from checking the inmate's back half and buttocks." (ECF No. 26, ¶ 62.) As such, Campbell was taken to cell A128 in the restraint chair with a privacy wrap covering his waist so staff could finish the strip- search. (*Id.*, ¶¶ 63-64.) Campbell states that prisoners directly across from cell A128 could see the search because there was partition that divided the hallway that allowed cells directly across from A128 an unobstructed view. (ECF No. 42, ¶ 27.)

Campbell states that he was "tethered to the cell door and standing there completely naked as they cut off my socks and the hair ties that were on my wrist." (ECF No. 42, ¶ 28.) Campbell states Gonzalez then instructed defendant officer Deondre Moore to finish the strip search. (*Id.*, ¶ 29.) Moore asked Gonzalez, "You want me to check his ass?", and Gonzalez replied, "Yup." (*Id.*) Campbell notes that during the strip search, no one went through the process by explaining step-by-step

what was occurring. (*Id.*, ¶ 30.) According to Campbell, Moore knelt down "and not with bladded [*sic*] hand but with his fingers he touched my anus without inserting them inside me but touching it causing me to tense up." (*Id.*) Campbell then stated, "What the fuck you doing" You can't do that, you need a warrant to do that." (*Id.*, ¶ 31.) Because he was upset that Moore had touched him that way, Campbell refused to kneel down so the leg restraints could be removed. (*Id.*) After several requests to comply with the process to remove the restraints, Gonzalez ordered Campbell to be placed back into the restraint chair and taken to a holding cell instead of back to his cell. (*Id.*; ECF No. 26, ¶¶ 78-80.) Campbell states that he wasn't removed from the holding cell until 8:35 p.m., and as he was in the process of leaving the holding cell, defendant Sgt. Brittany M. Harmon laughed at him. (ECF No. 42, ¶ 36.) He was then taken to his cell without any further incident. (*Id.*, ¶ 37.)

*The Defendants' Version of the Strip Search*

The parties do not dispute why the strip search occurred or that it was necessary. (ECF No. 41, ¶¶ 50-51.) However, the defendants state that the video of the strip search shows that Campbell's privacy was not violated. Specifically, the defendants assert the video shows that the during the first part of the strip search that "the inmate in the neighboring strip cell could not see Campbell's naked body." (ECF No. 45 at 3; ECF No. 30-2 at 16:30-17:10.) The video also shows that Campbell was still wearing his underwear at the point and he was given a privacy wrap. (ECF No. 45 at 3; ECF No. 30-3 at 19:00.) Additionally, the video shows that the defendants

"were circled around Campbell while cutting off his clothes, obstructing the other inmate's view of Campbell's body." (*Id.*)

As for the second part of the strip search, the defendants assert the video demonstrates that "there was only a solid wall directly across from the cell." (ECF No. 45 at 4; ECF No. 30-3 at 28:30-29:00.) Also, the video shows the pad-subduing team surrounded Campbell while the search was being conducted, blocking Campbell from the view of others. (ECF No. 26, ¶ 75; ECF No. 30-3 at 27:00-27:30, 31:55-32:20.)

With regard to the actual search, the defendants state the video shows that Moore informed Campbell what he was doing when he said, "I'm checking the cheeks." (ECF No. 26, ¶ 70.) Moore then "lowered Campbell's waist wrap and used his bladed hands to separate Campbell's buttocks to check for contraband." (*Id.*, ¶ 71.) When Moore was finished, he raised the wrap back up over Campbell's private parts. (*Id.*) Moore states he "did not take his hands out of the bladed position." Nor did he "place any finger in Campbell's anus." (*Id.*, ¶ 72.) The defendants note the search of Campbell's buttocks took less than 10 seconds. (*Id.*)

As for Campbell's assertion that Harmon laughed at him, they note that the incident allegedly occurred almost an hour after the strip search, as the strip search was completed at approximately 7:42 p.m. (ECF No. 45 at 5.)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**ANALYSIS**

Campbell claims that his Fourth and Eighth Amendment rights were violated when he was strip-searched in view of other prisoners and staff; when Moore did not

use a "bladed hand" technique to search his buttocks; and when Harmon laughed at him.

*Fourth Amendment Claim*

"[T]he Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). "Thus, when evaluating a prisoner's Fourth Amendment claim regarding a strip or body cavity search, courts must assess that search for its reasonableness, considering 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). The Seventh Circuit Court of Appeals has held that pat down and strip searches "do not violate the Fourth Amendment where the level of intrusion does not outweigh the purported justification for the search." *Henry*, 969 F.3d at 784. When considering the justification for the search, "courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell*, 441 U.S. at 547). Unless a plaintiff provides "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.*

Even when taking the facts in a light most favorable to Campbell, no reasonable factfinder could conclude that the strip search violated his Fourth

Amendment rights. Campbell does not dispute that a staff-assisted strip search was required, so the only question is whether the level of intrusion outweighs the justification for the search. Campbell argues that the search was unreasonable because other prisoners and staff not involved in the strip search could see his naked body and because Moore was overly-invasive when searching him. However, Campbell does not establish that he was actually strip-searched in view of other prisoners or staff or that his genitals or buttocks were exposed to others. Where a search does not expose the genitals or buttocks area to other prisoners or in public areas, it is not too intrusive and does not violate the Fourth Amendment. *Smith v. Bruce*, Case No. 24-CV-1656, 2026 WL 2455090 at *4 (E.D. Wis. Aug. 21, 2026). The video evidence shows that both parts of the strip search were conducted in areas that were mostly private and that no prisoners or staff had a full view of the search. The video also establishes that the officers conducting the search were surrounding Campbell, blocking Campbell from the view of other prisoners or staff. Campbell was afforded a privacy wrap for the search and during the first part of the search, he still had his underwear.

Campbell also does not demonstrate that Moore's search of his buttocks was overly-intrusive. While the video does not show how Moore conducted the search, it does show that Moore conducted it quickly—less than 10 seconds— in a perfunctory, and professional manner. Where video shows that officers were generally acting in a professional manner, a reasonable factfinder may assume that actions that were not captured by the camera were also conducted in a professional manner. *Boyd v.*

*Pollard*, 621 Fed. App'x 352, 356 (7th Cir. 2015). Campbell argues that Moore did not use a "bladed technique" but instead used his fingers and touched his anus. However, Campbell admits that Moore did not digitally penetrate him. Where it is established that a search is justified, touching a prisoner's anus during a strip search where the touch lasted "only a matter of seconds . . . .did not rise to a constitutional violation [because] minimal touching during the course of searching for potential contraband was not unreasonable." *Golden v. Myers*, Case No. 1:18-cv-03496-JMS-MJD, 2021 WL 981321 at *4 (S.D. Ind. March 16, 2021). As such, Campbell fails to establish that Moore's search was overly intrusive.

Because no reasonable factfinder could conclude that the strip search, including Moore's search of Campbell's buttocks, was overly intrusive, Campbell does not establish a Fourth Amendment claim. Summary judgment on the Fourth Amendment Claim is granted in favor of the defendants.

*Eighth Amendment Claim*

Strip searches can also violate the Eighth Amendment where "their purpose is 'maliciously motivated, unrelated to institutional security, and hence totally without penological justification.'" *Chatman v. Gosset*, 766 Fed. App'x 362, 364 (7th Cir. 2019) (quoting *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)). Where a plaintiff can show that "the strip search in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security," he demonstrates an Eighth Amendment claim. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (partially overruled on other grounds). Even if there is some

justification, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). "In short, where there is no legitimate reason for the challenged strip search or the manner in which it was conducted, the search may 'involve the unnecessary and wanton infliction of pain' in violation of the Eighth Amendment." *King*, 781 F.3d at 897 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

As mentioned above, it is undisputed that the strip search was justified. Campbell, however, does not establish that the strip search was conducted in a harassing or humiliating manner. The video evidence shows that the strip search was conducted professionally, and Campbell was quickly searched. During the search, there is no evidence of the defendants making comments or inappropriately touching him. Campbell argues that almost an hour after the search, Harmon laughed at him. Campbell, though he references a video, does not state where in the record to find the video, nor does he provide details as to the manner of Harmon's behavior. Also, Harmon laughing at him is too attenuated from the search to be evidence of harassment. Even if Harmon's laugh was related to the search, "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015).

Campbell also argues that the defendants did not follow the proper policy when conducting a search. However, "[s]ection 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*,

346 F.3d 752, 760 (7th Cir. 2003)). As such, not following policy does not rise to the level of a constitutional violation.

No reasonable factfinder could conclude that the defendants conducted the strip search without penological justification and with the intent to harass and humiliate Campbell. Summary judgment on the Eighth Amendment claim is granted in favor of the defendants.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. The defendants also argued that they were entitled to qualified immunity but because the court decided the case in their favor on the merits, it does not have to address that argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 21st day of October, 2026.

STEPHEN DRIES
United States Magistrate Judge